PAUL A. BONIN, Judge.
| |David Guidry, who is self-employed, appeals the judgment increasing his monthly child support payment from the previous amount of $1,000 stipulated in a consent judgment to the current award of $4,017.[1] He complains that his former *1114 wife, Ava Dejoie, did not prove a material change in circumstances from the 2004 consent judgment to the filing of her 2007 rule to increase and the resulting 2010 judgment; for that reason he argues that the judgment should be vacated. He also complains that the trial judge made legal errors both in determining his adjusted gross income, which resulted in the combined adjusted gross income of the parties’ exceeding the child support guidelines, and in setting the amount of the basic child support obligation. For those reasons, he further argues, if we find that Ms. Dejoie has proven a material change in circumstances, we should substitute our own judgment for that of the trial judge, and make our own finding of fact as to his adjusted gross income and then set the amount of his obligation ourselves.
We summarize our decision on the primary issues presented to us. First, we find no legal error which interdicts the trial court’s findings. Second, because we li>find that the trial judge was not clearly wrong in finding that Mr. Guidry’s income had increased to such an extent that his circumstances had materially changed, we conclude that a modification of the 2004 consent judgment is appropriate. And third, because the combined monthly adjusted gross income of the parties exceeds the scheduled guidelines, which requires that the trial judge use her discretion in setting the amount to be awarded as child support to Ms. Dejoie, we find that the trial judge’s award is not excessive and that she did not abuse her discretion. Accordingly, we affirm the judgment. We explain our decision in the following Parts.
I
In this Part we first set out the history of this controversy and then describe some of the specific features of Mr. Guidry’s income.
A
Mr. Guidry and Ms. Dejoie are the parents of one son, their only child.[2] Initially Ms. Dejoie commenced child support proceedings in Jefferson Parish. On September 9, 2004, in that proceeding the parties entered into a stipulated, or consent, judgment. That judgment recognized Ms. De-joie’s monthly gross income to be $3,852 and Mr. Guidry’s monthly adjusted gross income to be $10,053. Based upon their combined monthly adjusted gross income, and the scheduled child support guidelines then in effect, Mr. Guidry was condemned to pay $1,000 per month.[3]
|3On August 20, 2007, Ms. Dejoie registered the child support judgment in Orleans Parish. See La. C.C.P. Art. 2786. At the same time, in order to obtain a modification of the consent judgment, she filed a rule to increase the child support. She also filed a rule for contempt and for past due child support arrearages.[4] Because of delays occasioned by document production problems and the pending ar-rearages matter, the trial of the rule to increase extended over three days in three years. The trial court heard testimony from the parties and from two expert witnesses, both certified public accountants.
After permitting the parties post-trial submissions, the trial court rendered judgment on June 3, 2010.
*1115 In her extensive reasons for judgment, the trial judge found that Mr. Gui-dry’s monthly gross income at the time of trial was $47,494,[5] which was adjusted to account for his monthly payment of $1,100 support for his other minor son. Ms. De-joie’s monthly income had increased to $6,000. The combined monthly adjusted gross income, the trial judge found, was $52,394. The trial judge concluded that the resulting differential of $38,542 per month of increased income constituted a material change in circumstances.
The parties’ combined monthly adjusted gross income exceeded the highest amount scheduled in the guidelines used by the trial judge.[6] After a consideration 14of the expenses of the child and the lack of expenses of the father along with a formulaic extrapolation from the scheduled guidelines, the trial judge set the basic monthly child support at $4,633. The trial judge then apportioned each party’s share of the obligation, resulting in the cash portion of Mr. Guidry’s obligation increasing from $1,000 to $4,017 per month. See La. Civil Code Art. 227. The increase was retroactive to the date of the filing of the rule to increase. See La. R.S. 9:315.21 C. Mr. Guidry appeals the judgment.[7]
B
Mr. Guidry is a self-employed business person. The principal source of income is his wholly-owned IRS Subchapter S Corporation, Guico Machine Works. He also wholly owns several other businesses, one of which owns a farm or a country home.
Mr. Guidry earns a salary from Guico and a salary with a bank-holding company. His salary from Guico constantly has been $80,000 annually. From time to time, Gui-co loans or advances money to Mr. Guidry; his record of repayment is unclear. He earns as a director an additional steady amount of $15,000 annually from a bank-related company. Sometimes he receives dividend income from the bank, but his bank-dividend income fluctuates, and his interest income is inconsequential.
Guico has at least one company credit card, which Mr. Guidry and other employees use. Mr. Guidry possesses no credit cards in his personal name. He |sadmits to personal charges on the company credit card. Mr. Guidry did not produce any credit card statements to substantiate the nature of the charges, which averaged on a monthly basis between $20,000 and $25,000. Moreover, he did not produce any documentation suggesting that he reimbursed his company for his personal charges. For the years in question, Mr. Guidry reduced his federal tax liability by claiming all Guico credit card charges as business expenses. Ms. Dejoie contends that he is not entitled to subtract any of the credit card charges because he has not shown them to be ordinary and necessary expenses. Ms. Dejoie points out that in the absence of the credit card billings and specific explanations, there is no basis to distinguish which specific items qualify as ordinary and necessary expenses and which do not.
*1116 Mr. Guidry owns no personal vehicles but has the use of company cars, such as a BMW. He, likewise, incurs no housing expenses, but resides on Guico’s premises in an apartment, at his other company’s country farmhouse, and at a girlfriend’s house.[8]
The testimony and documentary evidence mostly addressed Mr. Guidry’s company’s performance from 2006 through the time of the last hearing date in 2010. The evidence demonstrated that its actual (not accounting) performance was consistently improving during those years, which was itself an improvement over its earlier performance, especially in 2004. A major issue which developed during the hearing was whether Mr. Guidry’s expensing of the company’s accelerated | f,depreciation to reduce his personal federal income taxes misrepresented his gross income for child support purposes.
With respect to depreciation as a business expense, Mr. Guidry initially had argued that he was entitled to a deduction for the accelerated depreciation allowable by the IRS.[9] Anticipating, however, that the trial judge in this case would not allow accelerated depreciation as an expense, Mr. Guidry alternatively argued that the trial judge should deduct from the gross receipts of the business as an ordinary and necessary expense required to produce income an amount equal to his company’s non-accelerated[10] depreciation of its assets. At the conclusion of the trial, with the trial judge’s authorization, Mr. Guidry recalculated Guico’s income using a non-accelerated method of depreciation. The trial judge considered this post-trial recalculation in her reasons for judgment.
Thus, Mr. Guidry suggested three different formulations for determining his income. The first determined his income on the basis of his salaries only. The second determined his income basing it on income from all sources, including Guico, but calculated income using accelerated depreciation. The third determined his income by using income from all sources and allowed the expensing of nonaccelerated depreciation only. We reference his third suggested formulation, which Mr. Guidry submitted post-trial, as his best-case scenario. See Part II-C-1, post.
II
|7In this Part we address the threshold issue: whether there has been a material change in Mr. Guidry’s circumstances to justify increasing his child support obligation to Ms. Dejoie. We review, in II-A the controlling law on material change of circumstances and the standard for our review of the trial judge’s determination, in II-B the controlling law on what constitutes a parent’s income and its application to Mr. Guidry’s income, and in II-C Mr. Guidry’s complaints about the trial judge’s findings of fact.
A
“An award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary.” La. Civil Code Art. 142. Ms. Dejoie bears the burden of proof on this issue. “An award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the par *1117 ties between the time of the previous award and the time of the rule for modification of the award.” La. R.S. 9:311 A(l). “[A] parent seeking an increase should be required to demonstrate an improvement in the payor’s financial condition, or greater needs by the minor.” Bordenave v. Bordenave, 93-1183 (La.App. 4 Cir. 1/13/94), 631 So.2d 519, 520. The trial judge found that there was a material change in circumstances due to the dramatic increase in Mr. Guidry’s income. We review that finding under the well-known clearly wrong standard. State, Dept. of Social Services ex rel. D.F. v. L.T., Jr., 05-1965, p. 6 (La.7/6/06), 934 So.2d 687, 690 (“We also note that the standard of review in a child support case is manifest error.”)
B
1
The Lawmaker provides the sole definition of a parent’s “gross income” for the purpose of calculating the child support obligation. A parent’s “gross income” is not limited to salaries. Instead, “gross income” includes “income from any source,” such as salaries, dividends and interest. See La. R.S. 9:315 C(3)(a). Also, “gross income” includes significant in-kind payments from self-employment which reduce the parent’s personal living expenses as well as a parent’s closely held corporation’s gross receipts “minus ordinary and necessary expenses required to produce income”. La. R.S. 9:315 C(3).[11]
*1118 li)Thus, in determining a parent’s gross income, the trial court clearly is not limited to a party’s salary or income reported on a tax return.
The court must also consider whether a parent receives in-kind payments. “Such payments include but are not limited to a company car, free housing, or reimbursed meals”. See LA. R.S. 9:315 C(3)(b). Mr. Guidry receives in-kind payments from Guico. He does not possess a personal automobile, but has free use of a number of company cars, including a luxury automobile. Also, he has no personally owned or rented residence. He has the use of a Guico-provided apartment as well as another company-owned farmhouse. These in-kind payments meet the statutory test for inclusion as income because they significantly reduce Mr. Guidry’s personal living expenses. Id. The value of these payments is quantifiable as income to Mr. Guidry.
The income to be attributed to a parent who owns a closely held corporation is the corporation’s “[g]ross receipts minus ordinary and necessary expenses required to produce income”. See La. R.S. 9:315 C(3)(c). The court, of course, is not bound by the controlling parent’s designation of which expenses are “ordinary and necessary,” even if made in federal tax returns. See Roberts v. Roberts, 95-1626 (La.App. 4 Cir. 6/5/96), 677 So.2d 1042; Hudnall v. Hudnall, 00-0330, p. 10 (La.App. 1 Cir. 5/11/01), 808 So.2d 641, 648; Baggett v. Baggett, 96-453, pp. 9-10 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 269; see also LA. R.S. 9:315 C(l)(c). If expenses are to be subtracted from gross receipts as “ordinary and necessary,” the party controlling the closely held corporation must bear that burden. See Scott v. Scott, 43,455 (La.App. 2 Cir. 8/13/08), 989 So.2d 290, 295 (proprietor/parent must demonstrate expense).
2
Thus, it is readily apparent that Mr. Guidry’s first contention that the trial judge should have restricted her findings regarding his current income to his two salaries is not supported by controlling law. While it is true that his salaries remained virtually unchanged from the time of the 2004 consent judgment until the filing of the rule to increase and through the trial, the trial judge must determine all sources of income to Mr. Guidry.
While we accept that Mr. Guidry established that his gross income as stipulated in the 2004 consent judgment represented his salaries at that time which had not changed by the time of the rule to increase, at trial he did not offer any proof whatsoever that in 2004 he had other sources of income which he had failed to disclose to either the Jefferson Parish judge or to Ms. Dejoie. If, as he alternatively suggests, his income has not really increased because in 2004 he did not report income from all sources, it is Ms. Dejoie, not he, who has been disadvantaged. More importantly for our purposes, however, such an argument undercuts his contention that no modification can be justified. If an earlier ^stipulated judgment was not given the proper consideration by the trial judge, it is error to rely upon the flawed judgment in denying a modification of child support. See Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 769.
In the absence of substantial evidence that the 2004 consent judgment was flawed either because of misrepresentation by Mr. Guidry or of improper application of the guidelines by the Jefferson Parish judge, we confine ourselves to the content of the 2004 consent judgment and presume that the district judge performed her duty under Stogner and approved the stipulated *1119 amounts based upon the guidelines using Mr. Guidry’s gross income, which at the time may have consisted of his salaries alone.[12] That judgment, to which Mr. Gui-dry consented, memorialized that his monthly adjusted gross income was $10,053.
C
Once Mr. Guidry’s contention that only his income from salaries should be considered for the purposes of determining whether a material change of circumstances has occurred is jettisoned, his best-case scenario for his monthly gross income shows an increase to $26,716.
1
Mr. Guidry’s best-case scenario for his annual gross income accepts his reconstructed calculation for Guico’s gross receipts, uncritically and fully deducting non-accelerated depreciation and all credit card charges. Mr. Guidry’s gross income, according to Mr. Guidry, using Guico’s gross receipts less ordinary 11?and necessary expenses including straight-line depreciation and credit card expense and all his other sources of income (such as his salaries) would be $320,588 annually, for a monthly gross income of $26,716.
Mr. Guidry is not entitled to a reduction of Guico’s gross receipts by expensing accelerated depreciation of its assets. Regarding acceleration, the statute itself expressly excludes from “ordinary and necessary expenses” amounts “allowable by the Internal Revenue Service for the accelerated component of depreciation expenses”. La. R.S. 9:315 C(3)(c) (emphasis added); see also Riggs v. LaJaunie, 98-304, pp. 4-5 (La.App. 3 Cir. 10/7/98), 720 So.2d 114, 117 (proprietor/parent bears burden that his earnings are calculated without the use of an accelerated component of acceleration). The trial judge clearly and correctly rejected any accelerated component of depreciation as an expense to reduce Guico’s gross receipts.
But “by implication, a non-accelerated straight-line depreciation expense of a business asset required to produce income may be an ordinary and necessary expense.” Thomey v. Thomey, 33,000, p. 3 (La.App. 2 Cir. 4/7/00), 756 So.2d 698, 701 (emphasis added). Although Mr. Guidry is correct in his argument that the trial judge did not fully accept his reconstructed allowance for non-accelerated depreciation, we are not persuaded that her refusal to debit the full amount has any appreciable effect on determining whether there has been a material change in his circumstances.
^J^Similarly, Mr. Guidry complains that the trial judge imputed to him additional estimated income of $10,000 per month for his unreimbursed company credit card charges. Typical monthly charges for the company’s single credit card were in the range of $20,000 to $25,000. Mr. Guidry testified that several employees, in addition to himself, also used the credit card. He explained that often large opportunity-purchases were made with the card. He acknowledged, however, that he used the card for entertainment and for personal expenses. He described a single instance of repaying the company for such a personal expense, one involving his purchase of a shotgun. Notably, despite discovery and informal requests, Mr. Guidry did not produce any credit card statements.[13] Guico’s CPA explained at trial that, in the preparation of the company’s federal tax returns, the accounting firm does not review the credit card statements but ac *1120 cepts Mr. Guidry’s representation that all charges are authorized deductible business expenses. The trial judge decided that, on average, Mr. Guidry enjoyed the personal use of the credit card in the amount of $10,000 a month and added that amount back to the gross income.
But, for the purposes of accepting ar-guendo Mr. Guidry’s best-case scenario, we lay that imputed income to the side. The inclusion or exclusion of such imputed income has no appreciable effect on our determination of whether the trial judge was clearly wrong in finding a material improvement in Mr. Guidry’s circumstances.
114Under Mr. Guidry’s best-case scenario, his monthly adjusted gross income more than doubled, indeed nearly tripled, from 2004 until the time of the hearing. We conclude that the trial judge was not clearly wrong in finding that there was a material change in his circumstances to justify an increase in his child support obligation.
2
We now address Mr. Guidry’s argument that the manner in which the trial judge determined his gross monthly income constitutes legal error which obliges us to set aside the finding and make a de novo determination of his monthly adjusted gross income. The Louisiana Supreme Court has instructed intermediate appellate courts to apply the manifest error standard of review unless “one or more trial court legal errors interdict the fact-finding process.” Evans v. Lungrin, 97-0541, 97-0577, p. 6 (La.2/6/98), 708 So.2d 731, 735. “A legal error occurs when the trial court applies incorrect principles of law and such errors are prejudicial.” Id., citing Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). But not every error is prejudicial. “Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.” Id. “When such a prejudicial error ... skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.” Id.
The trial judge determined Mr. Guidry’s monthly adjusted gross income to be $47,494. She arrived at this figure by averaging the parties’ conflicting submissions. The CPA who investigated Mr. Guidry’s finances at Ms. Dejoie’s 11firequest restated Mr. Guidry’s gross adjusted income for three years, 2006-2008. Mr. Gui-dry countered that the calculations of the restatement not only excluded the accelerated depreciation expense lawfully claimed for IRS purposes, but also failed to factor into the restatement the so-called straight-line depreciation. Post-trial, with permission of the court, Mr. Guidry supplied his own recalculation of Guico’s income by deducting as an expense the non-accelerated depreciation for each of the three years.
With respect to this specific component of the calculation, the trial judge did not choose to accept one calculation and reject the other. Rather the trial judge, as she characterized it, “reconciled” the conflicting calculations. Mr. Guidry, for his part, characterizes the trial judge’s finding as an objectionable Solomonic “splitting the baby.” The trial judge averaged each party’s submission of Guico’s income figures for the three years. Then the trial judge averaged the two resulting averages and made a finding of fact that Mr. Guidry’s average income for the three-year period was $579,267. The resulting average monthly income amount would be $37,493.
While such explicit mathematical averaging is not usually desirable, we note that the trial judge’s finding was within the range of reasonable alternatives, and as *1121 the fact-finder, she was not required to accept the evidence of one party and its expert to the exclusion of the other party and its expert. See Lasyone v. Kansas City Southern R.R., 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693; Katner v. Katner, 09-0974, p. 6 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 572.
But, more to the point, the trial judge’s calculation does not constitute “legal error” in the contemplation of Evans v. Lungrin, which would require us to make a de novo finding. The material issue, which we earlier described as the threshold |1fiissue, is whether there has been a material change in Mr. Guidry’s circumstances. The trial judge’s method did not affect a substantial right of Mr. Guidry. As we earlier observed, even under Mr. Guidry’s best-case scenario Ms. Dejoie is entitled to an increase in child support payments. The calculation method did not cause the trial judge to pretermit any other issue and it did not interdict her finding of a material change of circumstances. Therefore, we reject Mr. Guidry’s request that we make a de novo determination of whether there has been a material change because the trial judge’s finding is not clearly wrong and is reasonable.
Ill
In this Part we address the dis-positive issue: whether the amount of the child support award is excessive. Using either the trial court’s finding of the parties’ combined monthly adjusted gross income or Mr. Guidry’s best-case scenario for the parties’ combined income, we note that their combined income is higher than the highest scheduled amount on the guidelines. Thus, the trial judge was required to use her discretion in setting an amount of the obligation. “If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court ... shall use its discretion in setting the amount of the basic child support obligation ... but in no event shall it be less than the highest amount set forth in the schedule.” La. R.S. 9:315.13 B(l).
We review the setting of the obligation under the abuse of discretion standard. Id. “[T]he trial court has discretion in setting the amount of child support when the combined adjusted gross income of the parties exceeds the highest figure provided in the schedule, and its judgment in such matters will not be disturbed in the absence of a showing of an abuse of that discretion.” Rosenbloom v. Rosenbloom, 94-1762, p. 4 (La.App. 4 Cir. 4/26/95), 654 So.2d 877, 879.
117Here, again, Mr. Guidry urges us to find legal error and make a de novo determination of the basic child support obligation. He argues that the trial judge did not set the basic child support obligation by using her discretion. Instead, she im-permissibly designed a formula to factor a multiple of the highest scheduled income to mathematically extrapolate to a proportionate obligation. The trial judge, he argues, determined that Mr. Guidry’s income — as she determined it to be — was 1.75 times more than the $30,000 highest scheduled amount, and she multiplied the highest scheduled obligation amount to ascertain the basic child support obligation in this matter. Such mechanical extrapolation, he contends, is prohibited.
In Rosenbloom the district court, using a mathematical formula which it designed, determined that the differential between the highest scheduled amount and the parties’ combined income was twelve percent; then the district court used that twelve-percent factor to ascertain the amount of the obligation. Rosenbloom, pp. 5-6, 654 So.2d at 880. Because the district judge in that case applied the flat percentage “without concern and discretion by the court in balancing the needs and lifestyle of the *1122 child,” we found the use of such a mathematical extrapolation to be “clearly erroneous.” Id.
While it is true that the trial judge did do something very similar to that which was done by the district judge in Rosen-bloom, we discern one important distinguishing factor. In our case, the trial judge explicitly considered and discussed the needs of the child — a factor absent in Rosenbloom. Thus, the trial judge did engage in discretionary fact-finding along with the disfavored formulaic extrapolation.
118But, as we stated in the preceding Part II-C-2, ante, we will make a de novo determination of a fact only when there has been prejudice to a substantial right of a party. We detect no such prejudice in the amount which the trial judge decided as the basic child support obligation.
Mr. Guidry receives more than $6,000 monthly in salary income alone. Other than his child support payment for the benefit of his other minor son, which amount has been considered in adjusting his monthly gross income, Mr. Guidry has virtually no other out-of-pocket expenses. He has no housing expense. He has no automobile expense. He dines and entertains himself and others on the company credit card; he does not reimburse the company. If all of his monthly salary were absorbed by his child support obligation, Mr. Guidry would still have more than $20,000 per month in additional income for himself — under his best-case scenario. Undoubtedly as a result of his hard work, Mr. Guidry enjoys a comfortable lifestyle, which he can deservedly well afford.
This comfortable lifestyle should be extended to young Guidry who should not be disadvantaged in his lifestyle because of his parents’ divorce and his living primarily with his mother, Ms. De-joie. “Children are entitled to the same standard of living that they would enjoy if they lived with their father if their father’s financial circumstances are sufficient to permit this.” Bullock v. Bullock, 98-0268, p. 4 (La.App. 4 Cir. 8/19/98), 719 So.2d 118, 115. Therefore, “the circumstances of the parents and the child’s best interest are determinative considerations, and the parents’ ability to pay and the lifestyle that the child otherwise would enjoy if the 1^parents had not separated are important considerations.” Langley v. Langley, 07-0754, p. 7 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 887; Vaccari v. Vaccari, 10-2016, p. 4 (La.12/10/10), 50 So.3d 139, 142. See also La. Civil Code Art. 141 and La. R.S. 9:315 A.
The abuse-of-discretion standard of review is highly deferential to the trial judge’s determination. In other contexts, the Louisiana Supreme Court has refused to disturb an award unless it is “so gross as to be contrary to right reason.” Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). We have followed the Supreme Court’s lead and observed in a different context that we will not disturb a fact-finder’s discretion unless the award “shocks the conscience.” See, e.g., Scott v. American Tobacco Co., Inc., 09-0461, p. 16 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046, 1056, writ denied, 10-1358, 10-1361 (La.9/3/10), 44 So.3d 686, 44 So.3d 707, cert. den. sub nom. Philip Morris USA, Inc. v. Jackson, 564 U.S. -, 131 S.Ct. 3057, 180 L.Ed.2d 886 (2011).
With all of these considerations in mind, we are unable to find that the trial judge abused her discretion in finding the basic child support obligation to be $4,633 and apportioning 89% of that amount to Mr. Guidry. Considering Mr. Guidry’s income and the lack of personal expenses to support his lifestyle, his child support obligation of $4,017 is surely not contrary to right reason or shocking to the conscience. *1123 Thus, we conclude that the trial judge did not abuse her discretion and that the child support award is not excessive.
|2(1DECREE
The judgment of June 3, 2010, which modified the consent judgment of September 9, 2004, increasing the child support payments due by David Guidry to Ava Dejoie for the support of their minor son, is affirmed, retroactive to date of the filing of the rule to increase. See La. R.S. 9:315.21 C. All costs of the appeal are taxed to Mr. Guidry. La. C.C.P. Art. 2164.
AFFIRMED

. The judgment also increases his share of certain identified expenses from 72% to 89%.

. Mr. Guidry has another minor son, whom he financially supports.

. His monthly child support obligation also included a pro rata sharing of itemized expenses of the child.

.The rule for arrearages and contempt was resolved in the district court and is not involved in this appeal.

.The parties do not object or complain that the trial judge used a three-year income average. Considering Mr. Guidry’s self-employment status and the protracted trial of the rule to increase, we agree that in this case the averaging of three consecutive annual incomes is reasonable approach and we use the same approach. See, e.g., Janney v. Janney, 05-0507, p. 7 (La.App. 1 Cir. 7/26/06), 943 So.2d 396, 401.

. The trial judge referenced the 2008 amendments, but the rule to increase was filed when the 2001 version was applicable. Under either version, however, the parties' combined monthly adjusted gross income exceeded the scheduled guidelines.

. Ms. Dejoie has not appealed or answered the appeal. See La C.C.P. Art. 2121 and 2133 A.

. Mr. Guidry claimed as an expense the financial support he provides his girlfriend for her mortgage payments and utility bills. These totaled about $1,500 monthly.

. This included GoZone accelerated depreciation. See IRS Publication 4492.

.There are multiple forms of non-accelerated depreciation, the most common of which is straight line depreciation. Often, "straight line” depreciation is used as shorthand for non-accelerated depreciation.

. La. R.S. 9:315 C(3) reads:
(3) "Gross income" means:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent’s personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses” shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
(d)As used herein, "gross income” does not include:
(i) Child support received, or benefits received from public assistance programs, including Family Independence Temporary Assistance Plan, supplemental security income, food stamps, and general assistance.
(ii) Per diem allowances which are not subject to federal income taxation under the provisions of the Internal Revenue Code.
(iii) Extraordinary overtime including but not limited to income attributed to seasonal work regardless of its percentage of gross income when, in the court's discretion, the inclusion thereof would be inequitable to a party.
(iv) Any monetary gift to the domiciliary party when the objective of the gift is to supplement irregular child support payments from the nondomiciliary party.
(v) Any disaster assistance benefits received from the Federal Emergency Management Agency through its Individuals and Households Program or from any other nonprofit organization qualified as a tax-exempt organization under Section 501(c) of the Internal Revenue Code of 1954, as amended.

. Mr. Guidry testified that Guico was having difficulties in 2004.

. His counsel explained at oral argument that the company does not receive a paper statement, only online statements.