HUGHES, J.
12This is an appeal from a judgment reducing child support. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
The parties to this divorce action, Annette Bilello Hagen and David Hagen, were married on June 27, 1986, and thereafter established their matrimonial domicile in Terrebonne Parish. Of this marriage five children were born; the names of the children and their approximate ages at the time of the filing of this suit for divorce, on October 24, 2005, were: Stephen, 16; David, 15; Andrew, 13; and twins, Ben and Eli, 16 months.
At the time of the filing of the suit, Annette Hagen, though a registered nurse, was not employed outside the home, and David Hagen was employed as a physician in an ENT clinic in Houma, Louisiana. Initially, the parties entered into a consent judgment, agreeing to the joint custody of David, Andrew, Ben, and Eli, with Ms. Hagen being the primary domiciliary parent.[1] Dr. Hagen also agreed, in a subse *174 quent consent judgment, to pay Ms. Hagen the lump sum of $6,000.00 per month for both child support and temporary periodic spousal support, pending a hearing on the issues. The consent judgment declared that “for tax purposes only” the $6,000.00 monthly payment would be considered as being comprised of $4,000.00 for child support and $2,000.00 for spousal support. The consent judgment further declared: “This apportionment shall be to the prejudice of neither party, and shall not be considered in any future modifications of child support or the establishment of final spousal support obligations.” A final judgment of divorce was signed on October 25, 2006.
|sOn August 13, 2007 Dr. Hagen sought to be named the domiciliary parent for David, and Ms. Hagen later consented. Thereafter, Dr. Hagen sought a reduction in child support and the discontinuation of spousal support.
In a January 29, 2009 consent judgment, which also dealt with the partition of community property, the parties agreed to the waiver of claims related to spousal support and the discontinuation of Dr. Hagen’s monthly $6,000.00 support payment, effective February 1, 2009. The parties further agreed to exchange financial information for a recalculation of the amount of child support owed, which would be retroactive to February 1, 2009, and that “[i]n the meantime” Dr. Hagen would pay $4,000.00 per month in child support “without prejudice to either party.”
Subsequently, Ms. Hagen filed a rule to set child support, and issues were raised concerning who should have domiciliary custody of Andrew. During a December 2, 2009 hearing on other matters,[2] the parties agreed to Dr. Hagen having domiciliary custody of Andrew. Briefs on the child support issue were afterward filed with the trial court, and Dr. Hagen petitioned for a reduction in child support, additional physical custody time with his children, and for contempt on related issues against Ms. Hagen.
After a hearing on August 10-11, 2010 on the issues of child support, physical custody of the children, and Dr. Hagen’s motion for contempt against Ms. Hagen, the trial court fixed Dr. Hagen’s child support obligation for “the minor children, Ben, Eli and Andrew” at $3,200.00 per month, retroactive to February 1, 2009, and decreeing that Dr. Hagen would be responsible for 93% and Ms. Hagen 7% of the children’s unreimbursed Lmedical, school, and extracurricular expenses; the trial court judgment was signed on November 15, 2010.
Ms. Hagen has appealed this judgment, asserting the trial court “erred in failing to follow statutory mandates by modifying a basic child support obligation downward to an amount less than the highest amount set forth in the Louisiana Child Support Guideline Schedule of Basic Child Support Obligations.”
Subsequent to the filing of the appeal, the parties entered into a partial settlement, and stated in a “Notice of Partial Settlement,” filed September 14, 2011 with this court, the following:
I.
On August 15, 2011, the parties entered into a Consent Judgment in which the parties agreed that beginning September 1, 2011, Dr. Hagen will pay child support for the two remaining minor *175 children in the amount of $3,000 per month. Further, the parties have agreed to maintain the 93% / 7% allocation of direct expenses.
II.
Based on the attached Consent Judgments, there is no longer an issue before this Honorable Court as to the amount of child support that Dr. Hagen should pay from September 1, 2011 forward. The only issue now before this Honorable Court is the amount of child support Dr. Hagen should be paying from the date of the filing of his Rule to Reduce Child Support on February 9, 2010, through August 31, 2011.
III.
In addition, the parties have agreed that the percentage of payment of direct expenses should be 93% to Dr. Hagen and 7% to Mrs. Hagen. Therefore, the issue of what percentage of expenses should have been [paid] from February 9, 2010 through the present is no longer before this Honorable Court.
Accordingly, we limit our review of this case to the appropriate amount of child support owed by Dr. Hagen to Ms. Hagen during the period of February 9, 2010 through August 31, 2011.
|SLAW AND ANALYSIS
The premise of the Guidelines for Determination of Child Support, as well as the provisions of the Civil Code relative to child support, is that child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth. The economic data underlying these guidelines, which adopt the Income Shares Model, and the guideline calculations attempt to simulate the percentage of parental net income that is spent on children in intact families, incorporating a consideration of the expenses of the parties, such as federal and state taxes and FICA taxes. While the legislature acknowledges that the expenditures of two-household divorced, separated, or non-formed families are different from intact family households, it is very important that the children of this state not be forced to live in poverty, because of family disruption, and that they be afforded the same opportunities available to children in intact families, consisting of parents -with similar financial means to those of their own parents. LSA-R.S. 9:345(A).
The Incomes Shares approach to child support guidelines incorporates a numerical schedule of support amounts. The schedule provides economic estimates of child-rearing expenditures for various income levels and numbers of children in the household. The schedule is composed of economic data utilizing a table of national averages, adjusted to reflect Louisiana’s status as a low-income state and to incorporate a self-sufficiency reserve for low-income obligors, to form the basic child support obligation. LSA-R.S. 9:315(B)(1). In intact families, the income of both parents is pooled and spent for the benefit of all household members, including the children. Each parent’s contribution to the combined income of the family [ (¡represents his relative sharing of household expenses. This same income sharing principle is used to determine how the parents will share a child support award. LSA-R.S. 9:315(B)(2).
The Louisiana Child Support Guidelines’ Schedule of Basic Child Support Obligations is set forth in LSA-R.S. 9:315.19, and there is a rebuttable presumption that the amount of child support obtained by use of the guidelines is the proper amount of child support. See LSA-R.S. 9:315.1(A). The court may deviate from the guidelines if their application would not be in the best *176 interest of the child or would be inequitable to the parties. The court must give specific oral or ■written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts, and circumstances that warranted a deviation from the guidelines. The reasons must be made part of the record of the proceedings. LSA-R.S. 9:315.1(B)(1).
As provided in LSA-R.S. 9:B15.1(C), in determining whether to deviate from the guidelines, the court’s considerations may include: (1) that the combined adjusted gross income of the parties is not within the amounts shown on the schedule in LSA-R.S. 9:315.19;[3] (2) the legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party’s household; (3) that in a case involving one or more families, consisting of children none of whom live in the household of the noncustodial or nondomiciliary parent, but who have existing child support orders (multiple families); (4) the extraordinary medical expenses of |7a party, or extraordinary medical expenses for which a part may be responsible, not otherwise taken into consideration under the guidelines; (5) an extraordinary community debt of the parties, (6) the need for immediate, and temporary support for a child when a full hearing on the issue of support is pending but cannot be timely held (in such cases, the court at the full hearing shall use the provisions of LSA-R.S. 9:315 et seq. and may redetermine support without tite necessity of a change of circumstances being shown); (7) the permanent or temporary total disability of a spouse, to the extent such disability diminishes his present and future earning capacity, his need to save adequately for uninsurable future medical costs, and other additional costs associated with such disability (such as transportation and mobility costs, medical expenses, and higher insurance premiums); and (8) any other consideration that would make application of the guidelines not. in the best interest of the child or children or inequitable to the parties.
In the instant case, the parties’ combined adjusted monthly gross income (more than $40,000.00 per month) exceeds the highest sum shown on the LSA-R.S. 9:315.19-schedule ($30,000.00 per month), and thus, in accordance with LSA-R.S. 9:315.1(C)(l)(b), the court must determine an amount of child’ support pursuant to LSA-R.S. 9:315.13(B)(1). Paragraph (B)(1) of LSA-R.S. 9:315.13 provides that if the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in LSA-R.S. 9:315.19, the court must use its discretion, in setting the amount of the basic child support obligation, in accordance with the best interest of the child and the circumstances of each parent, as provided in Civil Code Article 141. Louisiana Civil Code Article 141 requires that child support be “based on the needs of the child and the ability of the parents to ^provide support.” [4] Importantly, LSA-R.S. *177 9:315.13(B)(1) further states that “in no event shall it [the basic child support obligation] be less than the highest amount set forth in the schedule.”[5] (Emphasis added.)
Ms. Hagen contends on appeal that the trial court erred by fixing Dr. Hagen’s child support obligation in this case “downward” to an amount less than the highest amount set forth in the child support guidelines. Dr. Hagen asserts that LSA-R.S. 9:315.8(E) authorizes a trial court to reduce the amount of child support owed by a nondomiciliary parent, based on the amount of time the child spends with him; LSA-R.S. 9:315.8(E) provides:
“Joint Custody” means a joint custody order that is not shared custody as defined in R.S. 9:315.9.
(1) In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.
(2) If under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation. A day for the purposes of this Paragraph shall be determined by the court; however, in no instance shall less than four hours of physical custody of the child constitute a day.
(3) In determining the amount of credit to be given, the court shall consider the following:
(a) The amount of time the child spends with the person to whom the credit would be applied. The court shall include in |9such consideration the continuing expenses of the domiciliary party-
(b) The increase in financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
(c) The best interests of the child and what is equitable between the parties.
(4) The burden of proof is on the person seeking the credit pursuant to this Subsection.
(5) Worksheet A reproduced in R.S. 9:315.20, or a substantially similar form adopted by local court rule, shall be used to determine child support in accordance with this Subsection.
In his oral reasons for judgment, the trial court stated that he was “deviating] from the schedule, because of ... the amount of time that Dr. Hagen has actual physical custody of the children, and because of the ninety-three (93%) percent *178 of the expense[s] that he is paying.”[6] Dr. Hagen maintains that LSA-R.S. 9:315.8(E) was properly applied to this case, while Ms. Hagen contends that the trial court should not have awarded less than the highest amount set forth in the LSA-R.S. 9:315.19 schedule for three children, which was $4,302.00 per month.
In this appeal, we are called upon to determine whether LSA-R.S. 9:315.13(B)(l)’s language, stating that “in no event” shall the basic child support obligation “be less than the highest amount” set forth in the LSA-jR.S.10 9:315.19 schedule, when the combined adjusted gross income of the parties exceeds the highest, level specified in the schedule, applies to the exclusion of LSA-R.S. 9:315.8(E)’s directive to the trial court to “consider the period of time spent by the child with the nondomieiliary party as a basis for adjustment to the amount of child support to be paid during that period of time.”
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. 'When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter, LSA-C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art, 13. Words and phrases shall: be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. The word “shall” is mandatory and the word “may” is permissive. LSA-R.S. 1:3. When the wording of a Section is clear and free of ambiguity, the letter of it *179 shall not be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4,
| nWhen interpreting a law, the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless, or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant, or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question that is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question that harmonizes and reconciles it with other provisions. A construction of a law that creates an inconsistency should be avoided when a reasonable interpretation can be adopted that will not do violence to the plain words of the law and will carry out the intention of the lawmaker. "When the expressions of a law are “dubious,” the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause that induced the lawmaker to enact it. When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one that renders part thereof ridiculous or nugatory. If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984). \nSee also Ransome v. Ransome, 2001-2361 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 752.
After a thorough review of the pertinent law, we find no ambiguity in the language of LSA-R.S. 9:315.13(B)(1) vis-á-vis LSA-R.S. 9:3158(E), when the overall statutory framework set forth in the “Guidelines for Determination of Child Support,” LSA-R.S, 9:315 et seq., is taken into account. The first step in calculating a child support obligation, pursuant to LSA-R.S. 9:315.2, is to combine the parties’ adjusted gross incomes. Then, each party’s proportionate share of the combined amount of the adjusted gross incomes is determined as a percentage (the amount obtained for each party is his or her percentage share of the combined adjusted gross income). LSA-R.S. 9:315.2(C). Next, the court determines the “basic child support obligation” amount from the schedule in LSA-R.S. 9:315.19, by using the combined adjusted gross income of the parties and the number of children involved in the proceeding. LSA-R.S. 9:315.2(D).
In the instant case, the “basic child support obligation” is determined in accordance with LSA-R.S. 9:315.13, since the Hagens’ combined adjusted income is higher (more than $40,000,00 per month) than the highest amount in the LSA-R.S. 9:315.19 schedule ($30,000.00 per month), Pursuant to LSA-R.S. 9:315.13, the trial court uses his discretion in setting the amount of the “basic child support obligation” in accordance with the best interest of the child and the circumstances of each parent, but “in no event” is the “basic child support obligation” set at an amount lower than the “highest amount set forth in the schedule.” The highest amount in *180 the schedule for three children is $4,302.00. See LSA-R.S. 9:315.19,
Nevertheless, once the “basic child support obligation” ($4,302.00 in this case) is determined, the inquiry is not at an end. After the “basic child 11ssupport obligation” has been established, the “total child support obligation” is then calculated. See LSA-R.S. 9:315.2(E).
To accomplish this, the following adjustments are made to the “basic child support obligation:” adding net child care costs (per LSA-R.S 9:315.3); adding child/children’s health insurance premium cost (per LSA-R.S 9:315.4); adding uninsured extraordinary medical expenses, if agreed by the parties or ordered by the court (per LSA-R.S 9:315.5); adding other extraordinary expenses (such as private school tuition, expenses to enhance the health, athletic, social, or cultural development of the child, and transportation costs), if agreed by the parties or ordered by the court (per LSA-R.S 9:315.6); and deducting a child’s extraordinary income that is used to reduce the costs of a child’s basic needs (per to LSA-R.S 9:315.7 and LSA-R.S. 9:315.8(B)). The resulting sum is the “total child support obligation.” LSA-R.S. 9:315.8(A).
Each party’s share of the “total child support obligation” is then determined by multiplying his or her percentage share of combined adjusted gross income times the “total child support obligation.” LSA-R.S. 9:315.8(C). The party without legal custody or the nondomiciliary party owes his or her percentage share of the “total child support obligation” as a money judgment of child support to the custodial or domiciliary party. LSA-R.S. 9:315.8(D).
The adjustment authorized by LSA-R.S. 9:315.8(E), to be made if under a joint custody order the person ordered to pay child support has physical custody of the child for more than seventy-three days, is an adjustment that is made “to the amount of child support to be paid.” Although not directly stated in the statute, it is obvious that the “credit” authorized by LSA-R.S. 9:315.8(E) is applied against the nondomi-ciliary | ^parent’s proportional share of the “total child support obligation,” since this provision follows Paragraphs (A) through (D) of the same statute, LSA-R.S. 9:315.8 (which gives instructions on how the “total child support obligation” is calculated), and since Paragraphs (E) directly states that the credit is to be applied against the “amount of child support to be paid.”
In this case, the evidence presented showed that Dr. Hagen had physical custody of his twins about forty (40%) percent of the time, while he had Andrew about fifty (50%) percent of the time. The trial court stated that he reduced Dr. Hagen’s proportionate share of the total child support obligation, because of the amount of time that Dr. Hagen has actual physical custody of the children and because of the ninety-three (93%) percent of the expenses that he was ordered to pay. After reviewing the record on appeal, including the evidence presented by the parties, we cannot say the trial court erred in its award of child support for the period of February 9, 2010 through August 21, 2011.
CONCLUSION
For the reasons stated herein, the judgment of the trial court awarding Annette Bilello Hagen child support against Dr. David Hagen for the period of February 9, 2010 through August 21, 2011 is affirmed. All costs of this appeal are to be borne by Annette Bilello Hagen.
AFFIRMED.
McDONALD, J., dissents.

. The domiciliary status of Stephen was not specified in a judgment, as he was away at boarding school at the time of his parents’ separation. However, it was evident from the record that Dr. Hagen ultimately assumed *174 custody of Stephen during the remainder of his minority.

. Though we note that there was extensive litigation on a variety of other issues between the parties, only relevant procedural history is set forth herein.

. As stated in LSA-R.S. 9:315.1(C)(1)(a) and (b), if the combined adjusted gross income of the parties is less than the lowest sum shown on the schedule, the court shall determine an amount of child support based on the facts of the case, except that the amount awarded shall not be less than the minimum child support provided in R.S. 9:315.14, but, if the combined adjusted gross income of the parties exceeds the highest sum shown on the schedule, the court shall determine an amount of child support as provided in R.S. 9:315.13(B)(1).

. The circumstances of the parents and the child’s best interest are determinative considerations, as are the parents’ ability to pay and the lifestyle that the child otherwise would *177 have enjoyed if the parents had not separated. Therefore, children are entitled to the same standard of living that they would have enjoyed if they lived with the nondomiciliary parent, if the nondomiciliary parent’s financial circumstances are sufficient to permit it. Thus, one parent's comfortable lifestyle should be extended to his minor children, who should not be disadvantaged in their lifestyle because of their parents’ divorce and their living primarily with the other parent. See Dejoie v. Guidry, 2010-1542 (La.App. 4 Cir. 7/13/11), 71 So.3d 1111, 1122. writ denied, 2011-1779 (La.9/2/11) 68 So.3d 520.

. Paragraph B(l) of LSA-R.S. 9:315.13 provides:
If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court:
(1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the scheduled]

. We note that the trial court failed to comply fully with LSA-R.S. 9:315.l(B)(l)'s directive that "[t]he court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.” (Emphasis added.) There is no finding in the record as to what amount would have been required under a mechanical application of the guidelines. Further, the trial judge failed to comply with LSA-R.S. 9:315.3, 315.4, and 315.6, in that he did not add the costs of net child care, health insurance premiums, or the expenses of tuition, registration, books, and supply fees of the children's private school to the basic child support obligation. (In this case, the trial court ordered Dr. Hagen to pay 93% of these costs, but did not include these costs in the calculation of the total child support obligation.) Nor did the trial court follow LSA-R.S. 9:315.8(E)(5)’s instruction that "Worksheet A reproduced in R.S. 9:315.20, or a substantially similar form adopted by local court rule, shall be used to determine child support in accordance with this Subsection.” However, in this particular case, we were able to resolve the issues presented on appeal, despite the deficiencies in the trial court record. Therefore, in the interest judicial economy and expediting the conclusion of this child support dispute, we will forgo remanding for compliance with LSA-R.S. 9:315.1(B)(1), LSA-R.S. 9:315.3, 315.4, 315.6, LSA-R.S. 9:315.8(E)(5), and LSA-R.S. 9:315.20.