HANS J. LILJEBERG, Judge.
12Plaintiff, Bonnie Biggers, filed a rule for contempt against defendant, Steven Biggers, for violating a consent judgment entered into by the parties relative to spousal support. Both parties appeal the ruling of the trial court, denying plaintiffs rule for contempt. For the reasons set forth below, we affirm.

Facts & Procedural History

On July 26, 2012, Steven and Bonnie Biggers finalized their divorce and entered into an agreement as to all issues relating to custody, spousal support, and community property. Ultimately, the final consent judgment was signed by the parties and the court on September 12, 2012. In the consent judgment, Steven Biggers agreed to pay final spousal support in the form of monthly premiums of COBRA insurance for Bonnie Biggers for a period of 18 months or until she obtained employment and health insurance. The pertinent portion of the consent judgment reads as follows:
“Steven Paul Biggers shall pay final support as the monthly premium for COBRA insurance for Bonnie Biggers until she obtains employment and health insurance, which covers all of her existing medical needs (i.e., which does not exclude her preexisting condition of breast cancer.) for a period of 18 months. The parties will review the issue of COBRA payments on December 4, 2012 at 9:00 a.m. with the district court to determine Medicaid options, employment search issues and income of Bonnie Biggers. In the event that Bonnie Blanchard Big-gers obtains employment with health insurance coverage as stated above, then she must immediately notify Steven Biggers and he may terminate the COBRA payments.
laThe COBRA payments shall begin upon obtaining the judgment of divorce, the premiums are approximately $660 per month. Bonnie Blanchard Biggers shall notify Steven Biggers as soon as she has obtained employment. Bonnie Biggers shall provide him *606 with documentation showing when health insurance, which does not exclude preexisting conditions for breast cancer can be obtained by Bonnie Big-gers.”
As of the date of signing of the consent judgment, Bonnie Biggers was terminated from Mr. Biggers’ employee group health insurance and Bonnie Biggers was to be notified by COBRA regarding continued coverage. Bonnie Biggers selected all plans offered by COBRA, including health, dental and vision, as she and Steven Big-gers had jointly chosen prior to the dissolution of the marriage. The medical premium was $493.52, the dental premium was $39.13, and the vision premium was $6.64. Thus, the total COBRA premium was $539.29 per month. Bonnie Biggers sent Steven Biggers an invoice for the elected coverage.
Thereafter, Steven Biggers made three consecutive payments directly to COBRA in the amount of $493.53 for medical coverage only. This ultimately resulted in the cancellation of Bonnie Biggers’ health insurance coverage. Bonnie Biggers learned of the cancellation when she attempted to schedule a procedure in October 2012, when she also learned that her COBRA coverage could not be reinstated under any circumstances.
Bonnie Biggers subsequently filed a Rule for Contempt that was denied by a hearing officer on November 7, 2012. On December 4, 2012, the rule was heard by the district judge, who found Steven Big-gers did not willfully or intentionally violate the consent judgment. However, the court ordered Steven Biggers to pay the medical bills of Bonnie Biggers for 18 months from the date of the divorce as it was the court’s intent in the consent judgment that Bonnie Biggers be awarded comparable coverage as final spousal support. It is from this ruling that the parties appeal.
| ¿¡Assignments of Error
On appeal, defendant/appellant, Steven Biggers, asserts that the trial court erred in imposing a penalty against him after finding that he was not in contempt of the September 12, 2012 judgment.
Plaintiff/Appellee, Bonnie Biggers, asserts that the trial court erred in failing to find Steven Biggers in contempt of the consent judgment and failing to award actual attorney’s fees and other relief requested in the Rule for Contempt.

Law & Analysis

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Contempts of court are of two kinds, direct and constructive. Id.
Contempt proceedings are designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, writ denied, 98-0990 (La.5/29/98), 720 So.2d 343, cert. denied, Polaris Ins. Co., Ltd. v. Brunet, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (U.S. 1999); Parish of Jefferson v. Lafreniere Park Foundation, 98-345 (La.App. 5 Cir. 9/15/98), 720 So.2d 359, writ denied, 98-2598 (La.10/28/98), 723 So.2d 965.
Direct contempt is committed in the presence of the Court, and constructive contempt is committed outside of the presence of the Court. DeGruy v. DeGruy, 98-1416 (La.App. 4 Cir. 1/27/99), 728 So.2d 914. Willful disobedience of a court order constitutes constructive contempt of court. La. C.C.P. art. 224(2); In re Jones, 10-66 (La.App. 5 Cir. 11/9/10), 54 So.3d 54, *607 unit not considered, 10-2738 (La.2/4/11), 56 So.3d 979.
|sTo find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. Brunet, supra. A trial court is vested with great discretion in determining whether circumstances warrant holding a party in constructive contempt of court pursuant to La. C.C.P. art. 224 for willful disobedience of a court order. South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent To Own, Inc., 09-0011 (La.App. 4 Cir. 6/30/10), 42 So.3d 1094, unit denied, 10-1810 (La.10/29/10), 48 So.3d 1093.
The record reflects that testimony was taken by both parties at the hearing on the rule for contempt. Steven Biggers testified that he was under the impression and under the advice of counsel that pursuant to the July 26, 2012 consent judgment, he was required only to pay the medical premium for Bonnie Biggers. Although testifying that Bonnie Biggers had medical, dental, and vision coverage during the course of the marriage and despite receiving an invoice from COBRA for all three premiums, Steven Biggers testified that he made three payments in the amount of $493.54 for the medical portion only. Steven Biggers testified that he text messaged Bonnie Biggers on September 10, 2012, explaining that she would have to pay the dental and vision premiums if she wanted said coverage and would have to pay those premiums by October 1, 2012. Steven Biggers testified that he did not receive a response from Bonnie Biggers regarding the dental and vision premiums, and further testified that he was unaware that if those portions of the premiums were not paid, her entire coverage would be cancelled. Steven Biggers testified that he did not find out that Bonnie Big-gers’ COBRA coverage was terminated until she notified him on October 23, 2012, when he then attempted to rectify the situation, but COBRA would not discuss the coverage without Bonnie Biggers’ presence on the call.
IfiBonnie Biggers testified that she had all three benefits during the marriage and it was her understanding that Steven Big-gers was required to pay medical, dental, and vision premiums pursuant to the consent judgment signed July 26, 2012. Bonnie Biggers testified that her COBRA coverage was ultimately terminated on August 31, 2012, because full payment was not made. Bonnie Biggers acknowledged that COBRA did contact her with Steven Biggers on the line; however, she testified that she did not want to continue the call without her attorney. When she called back with her attorney, COBRA indicated that her coverage could not be reinstated. Bonnie Biggers also testified that she did not respond to Steven Big-gers’ text message on the advice of counsel, and further that she did not request counsel to contact Steven Biggers or his attorney regarding the matter.
At the conclusion' of the hearing, the trial court, irritated with both parties’ mishandling of the instant matter, clarified the intent of his ruling in the consent judgment that Bonnie Biggers receive comparable medical coverage, as she did during the marriage, for 18 months from the date of signing or until she obtained employment with benefits of comparable coverage. The trial court ultimately ruled that he did not find Steven Biggers intentionally disobeyed the court’s order because “it was an area that had some — a little bit of question.” He further articulated that he found both parties to be delinquent in the failed resolution of the matter and did not find a direct intent on the part of Steven Biggers to be in contempt of the court’s *608 order. The trial court made clear at that point, however, that Steven Biggers was to pay Bonnie Biggers’ medical bills as intended by the consent judgment.
Upon review of the record, we do not find that the trial court abused its great discretion in its finding that Steven Biggers did not willfully disobey the court’s 17order in the July 26, 2012 consent judgment. Although the court spoke of comparable coverage at the July 26, 2012 hearing, the language of the consent judgment did not specify medical, dental, and vision coverage. Moreover, Steven Big-gers testified that it was his understanding that he only need pay the medical portion of the premium and did in fact do so. As such, we find no error in the trial court’s ruling finding Steven Biggers did not commit a constructive contempt of court.
Additionally, we find no merit in defendant/appellant’s argument that the trial court imposed a penalty upon Steven Biggers even though he was not found to be in contempt of court. It was agreed upon by both parties and the overall intent of the consent judgment that Bonnie Big-gers would receive spousal support in the sole form of health care. Upon the lapse of COBRA coverage, ultimately due to Steven Biggers’ failure to pay the COBRA premium in full, the consent judgment as written could no longer be enforced. The trial court, in order to maintain compliance with the intent of the parties when entering into the judgment, ordered that Steven Biggers pay Bonnie Biggers’ medical bills. In these limited circumstances, where a term of the judgment can no longer be enforced, we do not find that the trial court abused its discretion in enforcing the intent of the judgment that Bonnie Big-gers receive health care.
Insofar as plaintiff/appellee appealing the trial court’s denial of attorney’s fees and other relief relative to the enforcement of spousal support under La. R.S. 9:375, we also find no error in the trial court’s ruling. This was a rule for contempt proceeding not an action for past due spousal support. Moreover, the trial court found both parties to be delinquent in the handling and ultimate lapse of the COBRA coverage. An award of attorney’s fees is within the sound discretion of the trial court. Derbes v. Derbes, 06-91 (La.App. 5 Cir. 9/26/06), 942 So.2d 1086. In the instant circumstances, we do not find that the trial court abused its discretion in denying attorney’s fees and other relief sought in plaintiffiappellee’s Rule for Contempt. See Harris v. Harris, 505 So.2d 835 (La.1987).

Decree

Based on the foregoing, we affirm the ruling of the trial court.

AFFIRMED