ROSEMARY LEDET, Judge.
11 This is a post-divorce matter. Jules A. Fontana, III, the former husband, appeals the trial court’s February 25, 2013 judg *176 ment in favor of his former wife, Mary D. Fontana. In its judgment, the trial court makes the following five rulings: (i) awards Mrs. Fontana $3,369.50 per month for three years in rehabilitative spousal support; (ii) awards Mrs. Fontana $4,176.59 per month in child support for the two minor children;[1] (iii) makes $3,940.00 arrearages of support executory; and (iv) finds Mr. Fontana in contempt for failure to pay support; and (v) awards Mrs. Fontana $1,500.00 in attorneys’ fees and $87.00 in court costs based -on the contempt finding. Mr. Fontana contends that all five rulings are erroneous.
For the reasons that follow, we amend the spousal support award to $2,990.77 and affirm the amended award; affirm the child support award; and reverse the making arrearages executory, the finding of contempt, and the associated attorneys’ fees and court costs awards.
| .FACTUAL AND PROCEDURAL BACKGROUND
On March 20,1992, Mr. and Mrs. Fonta-na were married in Orleans Parish and established their matrimonial domicile there. Four children were born of the marriage: Claire Fontana (born January 11, 1993), Margaux Fontana (born April 10, 1994), Harrison Fontana (born August 25, 2000), and Wyatt Fontana (born November 14, 2007).
On January 4, 2011, Mrs. Fontana filed a petition for divorce pursuant to La. C.C. art. 102. In her petition, she requested, among other things, joint custody,' child support, and interim spousal support. On March 2, 2011, Mr. Fontana reconvened and sought relief including custodial time with his minor children. On March 15, 2011, the parties executed an interim consent judgment. In the consent judgment, the parties agreed that Mr. Fontana would pay a monthly lump sum of interim spousal support and child support, which had two components: payments of a multiple enumerated direct expenses and a monthly cash payment of $2,750.00.[2] The consent judgment stated that it was understood any ultimate award would be retroactive to January 4, 2011, subject to any credits. The consent judgment also provided for shared physical custody of the minor children, Harrison and Wyatt Fontana, on an alternating weekly basis.
On March 20, 2011, Mrs. Fontana filed an amended and supplemental amended petition for divorce to add the following allegation:
Petitioner is free from fault and is without sufficient means for her support and defendant is gainfully employed with substantial | fincóme and should be ordered to pay to petitioner final spousal support to be determined by the court in accordance with law.
On May 20, 2011, the trial court judge signed the consent judgment.
On April 30, 2012, Mr. Fontana filed a Motion for Delineation and Determination of Child Support and Interim Spousal Support, Fault, Final Spousal Support, and Termination of Interim Spousal Support.
On June 14, 2012, a final judgment of divorce was entered.
On November 20, 2012, Mrs. Fontana filed a Motion for Contempt, to Accumu *177 late and Make Executory Past Due Support, with Interest, Attorneys’ Fees, Costs. In her contempt motion, Mrs. Fontana averred that Mr. Fontana has “failed to pay interim spousal support in the sum of $3,940.00 in reimbursement expenses, and has not paid the cash amount which is due for the month of November, 2012.”
On November 27, 2012, the trial court considered the three pending motions— Mrs. Fontana’s motion for permanent spousal support, Mr. Fontana’s motion that the amount of child support be delineated and that Mrs. Fontana’s request for permanent spousal support be denied, and Mrs. Fontana’s rule to make past-due support amounts executory and motion for contempt for failure to pay past-due support and reimbursements.
At the hearing on that date, three witnesses testified: (i) Mr. Fontana; (ii) Mrs. Fontana; and (iii) John F. Maggiore, Jr., CPA. To provide a background for analyzing the issues raised on appeal, we briefly outline the evidence presented at the hearing.

(i) Mr. Fontana

Mr. Fontana testified that he has been an attorney for almost twenty years. He eo-owns a law firm, Fontana & Fontana, with his brother; they, are equal 1^partners. He described his annual income from the law firm over the prior three years as “pretty consistent;” his annual income for each of those years was over $300,000. Although he received over $300,000 in draws from his law firm in 2010, Mr. Fontana conceded that he paid no taxes to the Internal Revenue Service (“IRS”) for that year. As a result, the community has an outstanding tax liability to the IRS of about $130,000, including penalties and interest. Mr. Fontana testified that in 2011 he made $80,000 in deposits with the IRS for his 2011 federal taxes. He explained that he made the deposits for the 2011 tax year because Mrs. Fontana had filed for divorce in January 2011.[3]
Mr. Fontana testified that in the beginning of the marriage he did not want Mrs. Fontana to work; however, she has worked at different jobs at different times throughout the marriage. Mr. Fontana acknowledged that the parties’ joint return for 2008 reflected that Mrs. Fontana’s only income was a $280 profit from her catering business, Creole Festival Services. Mr. Fontana testified that Mrs. Fontana’s “income was not a big factor to [him] in the marriage because it wasn’t enough.”

(ii) Mrs. Fontana

[ fiMrs. Fontana testified that she graduated from Loyola University in 1988 with an undergraduate degree in advertising and a minor in religious studies. She has never worked in either field. After graduating from college, she worked for the State of Louisiana in the office of family support. In 1992, she married Mr. Fonta-na. In January 1993, their first child was born. Thereafter, she worked on a part-time basis. Her work history included “a *178 little landscaping;” working for Rehage Entertainment (“Rehage”) doing athletic events, such as “walk/runs;” and bookkeeping. She testified that she stopped working after their third child was born in 2000 because Mr. Fontana did not want her to work.
In July 2011, Mrs. Fontana’s mother died, leaving a substantial estate valued at approximately $4.5 million. Mrs. Fonta-na’s share • of the estate included' $600,000.00 in Merrill Lynch accounts, which were broken down as follows: $400,000.00 in an IRA account and $200,000.00 in a cash management account (“CMA”). Mrs. Fontana also received money from the 2011 estate sale of her mother’s house (between $20,000 and $25,000) and a mandatory distribution from her mother’s life insurance policy. Mrs. Fontana testified that “it was this bulk [of money] and the other amounts that went into one kitty” that she used to purchase a new house in Lakeview for $250,000 in cash. She also spent another $200,000 on renovating the house. She explained that the renovations were not luxury items, but rather necessities given the dilapidated condition of the house. She further explained that the reason she purchased the new house was because she was worried about where she and her children were going to end up after the divorce. She still further explained that her family lives in Lakeview and that she wanted to be close to her family.
|fiIn connection with her mortgage application for the new house, Mrs. Fontana listed her assets on the “Uniform Residential Loan Application” as totaling $1,448,909.83. The break down of her assets was as follows:
(i) liquid assets: Capital One bank (checking) account — $17,544.83;
(ii) two pieces of real estate: Argonne Boulevard (community home with $350,000 mortgage), $649,000, and Warbler- (new Lakeview home), $350,000;
(iii) automobile: 2006 Chevy Tahoe, $11,000; and
(iv) other asset: Merrill Lynch inherited accounts — $431,365.
Ms. Fontana testified that at the time of the hearing her checking account balance was $2,000.
Other than the mandatory distributions from her inherited IRA, Mrs. Fontana testified that her only source of income was from her part-time, seasonal work for Re-hage. She explained that she works for Rehage on a seasonal basis in connection with its annual VooDoo Music Festival. She further explained that she sells the booths and that she has a food booth at the event. She does the catering for her food booth. Although she acknowledged that she could continue her work part-time with the VooDoo Music Festival, she stated that it would not produce enough income to raise her children. She also noted that the reason she did not seek full-time employment with Rehage was two-fold. First, the owner of Rehage hires mainly “twenty year olds.” Second, the job would require extensive travel, which she was unable to do because of her children.
Mrs. Fontana estimated that to cover her and her two minor children’s monthly expenses she required $7,541.09 from Mr. Fontana. She stated that this would be a substantial reduction from what she was currently receiving in interim support under the consent judgment. She estimated that Mr. Fontana was paying 17$15,000 per month for her household, which included the living expenses, the children’s tuition, and the $2,750 monthly cash payment.
According to Mrs. Fontana, her employment plan was to resume her landscaping work. She explained that in 1997 she *179 started a part-time landscaping business, which she stopped because she did not have day care for the children. She further explained that in order to start a full-time landscape business she needed to obtain a degree as a landscape contractor. She planned to attend Delgado to obtain that degree. She estimated that it will take two to three years for her to earn her degree from Delgado. She explained that the length of time it will take for her to earn her degree will depend on which of her credits from Loyola transfer to Delgado. She stated that she has started the process by obtaining her Loyola transcripts. For these reasons, Mrs. Fontana testified that she was requesting rehabilitative spousal support for three years.

(in) John F. Maggiore, Jr., CPA

Mr. Maggiore, who was stipulated to be an expert in public accounting, testified as Mrs. Fontana’s expert. Mr. Maggiore prepared a summary of Mr. Fontana’s draws from his law firm from January 1, 2012 through June 21, 2012. Mr. Magg-iore interpolated from that five months of income to arrive at an annualized figure of $407,405 or $33,950 per month. Using the $33,950 figure, Mr. Maggiore testified that Mr. Fontana’s net monthly income was either $20,370 (at a 40% tax rate) or $22,634 (at a 30% tax rate).[4] Mr. Fontana also received about $1,000 per month in rental and another $1,000 per month for a car lease. As |8a result, the total gross monthly income figure Mr. Maggiore arrived at was about $35,950.
As to Mrs. Fontana, Mr. Maggiore prepared a spreadsheet analyzing and apportioning her actual living expenses (the “Spreadsheet”).[5] He explained that he prepared the Spreadsheet based on Mrs. Fontana’s plan to move to her new house by the beginning of the year and her credit card receipts for 2011. Mr. Maggiore further explained that in 2011 there were four people in the community house — three minor children and Mrs. Fontana. Mr. Maggiore thus allocated the expenses 25% per person — 25% to Mrs. Fontana, 25% to the now major child (who is now away at college), and 50% to the remaining two minor children. Based on the analysis set forth in the Spreadsheet, Mr. Maggiore testified that to cover Mrs. Fontana’s and her two minor children’s monthly expenses she required $7,541.09.
At the end of the hearing, the trial court orally ruled in Mrs. Fontana’s favor on the issues of rehabilitative spousal support, child support, support arrearages, and contempt.
On February 25, 2013, the trial court signed a final judgment. In the judgment, the trial court awarded $3,369.50 per month for three years in rehabilitative spousal support and $4,176.59 per month in child support for the two minor children. The spousal support and child support was awarded from the date of the hearing, November 27, 2012. In addition, the trial court ordered Mr. Fontana to pay 100% of the tuition, school related expenses, and health insurance; and 98.98% of the extraordinary medical expenses, work-related after care, and the | extracurricular expenses for the minor children. The trial court also made the $3,940.00 in support arrearages executory, found Mr. Fontana *180 in contempt for failure to pay support, and awarded Mrs. Fontana $1,500.00 in attorneys’ fees and $87.00 in court costs associated with the contempt finding. This appeal followed.
DISCUSSION
For purposes of our discussion, we divide our analysis of the arguments Mr. Fontana raises on appeal into three parts: (i) rehabilitative spousal support; (ii) child support; and (iii) constructive contempt.

(i) rehabilitative spousal support

In addressing the issue of spousal support, the following three-tiered standard of review applies:
First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge’s findings of fact. We will not overturn the trial judge’s factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge’s great discretion to set such awards.
Vincent v. Vincent, 11-1822, p. 6 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152, 1158 (citing Williams v. Poore, 10-1087, p. 8 (La.App. 4 Cir. 1/12/11), 55 So.3d 953, 958).
The governing statutory provisions on spousal support are La. C.C. art. Ill and 112, which provide as follows:
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.
La. C.C. art. 111.
| iqA. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:
1) The income and means of the parties, including the liquidity of such means.
2) The financial obligations of the parties.
3) The earning capacity of the parties.
4) The effect of custody of children upon a party’s earning capacity.
5) The time necessary for the claimant to acquire appropriate education, training, or employment.
6) The health and age of the parties.
7) The duration of the marriage.
8) The tax consequences to either or both parties.
C. The sum awarded under this Article shall not exceed one-third of the obligor’s net income.
La. C.C. art. 112.
Under Articles 111 and 112, entitlement to spousal support is contingent upon the claimant spouse establishing two factors: (i) freedom from fault, and (ii) “in need of support.” In this case, the parties stipulated that Mrs. Fontana is free from fault. Her entitlement to spousal support thus turns solely on whether she is “in need of support,” as that term is used in La. C.C. arts. Ill and 112.
*181 Although the articles do not define “in need of support,” the jurisprudence has equated it with insufficient means of support or necessitous circumstances. See Zatzkis v. Zatzkis, 632 So.2d 307, 319 (La.App. 4th Cir.1993) (citing Musselman v. Musselman, 524 So.2d 90 (La.App. 4th Cir.1988)); see also Vorisek v. Vorisek, 423 So.2d 758, 762 (La.App. 4th Cir.1982). Means, in this context, has been defined as including not only the income but also the assets of the claimant spouse. Sercovich v. Sercovich, 11-1780, p. 6 (La.App. 4 Cir. 6/13/12), 96 So.3d 600, 603 (citing Wascom v. Wascom, 97-0547 (La.App. 1 Cir. 6/29/98), 713 So.2d 1271, 1274).
The claimant spouse has the burden of proving he or she has insufficient means of support or is in necessitous circumstances. Mayes v. Mayes, 98-2228 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257, 1261 (citing Faltynowicz v. Faltynowicz, 30,605 (La.App. 2 Cir. 6/24/98), 715 So.2d 90, 94); McMullen v. McMullen, 11-220, p. 6 (La.App. 5 Cir. 12/13/11), 82 So.3d 418, 421. In making this determination, “a court considers the expenses required to procure the basic necessities of life, such as food, shelter, and clothing. Also included in the determination are reasonable and necessary automobile expenses, medical and drug expenses, utilities, and household expenses.” Id. To adjust for changes in technology, recent cases have added internet and cable fees to the list of necessary items for maintenance. See Anderson v. Anderson, 48,027, p. 10 (La.App. 2 Cir. 5/15/13), 117 So.3d 208, 215 (finding no abuse of discretion in trial court’s treatment of internet and cable access as an item of maintenance).
In awarding $3,369.50 in rehabilitative spousal support for three years, the trial court provided the following oral reasons:
The Court finds that Mary Fontana has proven her entitlement to permanent spousal support. I’ve looked carefully at MF-2 [the Spreadsheet], which is the list of expenses broken down per month between Mrs. Fontana and the two minor children, Wyatt and Harrison. They do not seem extravagant or unreasonable, particularly considering the income of the Father.
The Court finds that Ms. Fontana is entitled to the amount of $3,369.50 per month ... [I]t will continue for three years only; During which time it’s anticipated that Ms. Fontana will obtain the credentials that she needs in order to support herself.
On appeal, Mr. Fontana contends that the trial court abused its discretion in awarding permanent spousal support to Mrs. Fontana. He contends that she has substantial means, disqualifying her from claiming permanent spousal support. In support, he makes the following three arguments.
First, he contends that she “imprudently and unreasonably depleted a large amount, yet not all, of the liquid assets she received from her mother’s estate [purchasing a new, luxury house] instead of using it for her own maintenance.” He points out that she was living in the community house, which has $300,000 in equity. He contends that if she was in necessitous circumstances, she would have waited until the community home was sold before she purchased another house.
Second, he contends that Mrs. Fontana also received other significant amounts of money between 2011 and 2012, which included: $20,000 to $25,000 from the 2011 estate sale of her mother’s house, a mandatory distribution from her mother’s life insurance policy in an unknown amount, mandatory distributions from the inherited IRA in both 2011 and 2012, and $8,000 to $9,000 from Rehage | iafor catering at the *182 VooDoo Music Festival in 2012. During this same time period, Mr. Fontana emphasized that he was paying all of the bills for the household.
Third, given Mrs. Fontana’s health, age, and education, he suggests that income should be imputed to her. He contends that as a college graduate she does not need any further specialized educational training. He points out that Mrs. Fontana testified that she was “a healthy forty-eight year old” and that she has no infirmity or impediment preventing her from working full-time. He further points out that during the two years that have elapsed since the parties separated, Mrs. Fontana has taken no steps to secure stable employment. Instead, Mr. Fontana stresses that she spent her time acting as a contractor on her new house.
Mrs. Fontana counters that the trial court correctly awarded her rehabilitative spousal support for three years. She points out that she has no liquid assets and that her only income is the part-time, seasonal work for Rehage (VooDoo Music Festival) and the mandatory distributions from her inherited IRA.
Mrs. Fontana acknowledges that á spouse claiming support is required to deplete her liquid assets to some extent before she may be entitled to support after divorce; however, she points out that a rule of reasonableness applies to determine whether a spouse claiming support must deplete his or her assets. See Falterman v. Falterman, 98-158, pp. 6-7 (La.App. 5 Cir. 1/13/99), 726 So.2d 1023, 1026. Under that rule of reasonableness, both the type of asset and the consequences of liquidating the asset must be considered. Id. Mrs. Fontana contends that she neither squandered her funds nor disposed of her assets in bad faith. See Drury v. Drury, 38,951, p. 7 (La.App. 2 Cir. 9/22/04), 883 So.2d 465, 469 (rejecting contention 114that claimant spouse should have to deplete her assets and reasoning that “one might question whether Betty was the best manager of her money, but the evidence does not support the conclusion that she ‘squandered’ her funds or that her dispositions were made in bad faith”). Mrs. Fontana points out that her withdrawals from the inherited IRA are fully taxable. She thus contends that she should not be required to liquidate the IRA given the adverse tax consequences.
As to imputing income to her, Mrs. Fon-tana stresses that she has never worked in either of the fields in which she earned a college degree. She points out that the jurisprudence has recognized that training and education for a reasonable period of time directed toward improving earning capacity is a proper consideration in evaluating earning capacity. She additionally points out that “[a] spouse does not have to take employment of any nature immediately following divorce. Difficulty in finding employment suitable for the spouse’s age, training and ability is also a proper consideration.” Falterman v. Falterman, 98-158, pp. 6-7 (La.App. 5 Cir. 1/13/99), 726 So.2d 1023, 1026 (citing Fountain v. Fountain, 93-2176 (La.App. 1 Cir. 10/7/94), 644 So.2d 733, 739). Given these considerations, Mrs. Fontana contends the trial court did not abuse its discretion in finding she is in need of support. We agree.
Mrs. Fontana met her burden of proving that she is in need of support. Mrs. Fon-tana’s current income is minimal. As noted, her only employment is part-time, seasonal work for Rehage from which she earns approximately $8,000.00 to $9,000.00 per year. The only other income she receives is an annual distribution from the IRA she inherited; the distribution is between $8,000.00 and $10,000.00 per year. She testified that she has no liquid assets *183 and that, at the time of the hearing, her checking account balance was only $2,000.00. She further testified 11Rthat her mortgage on her new house is $1,965.00. She estimated her monthly bill for food is $826.27 and for clothing is $146.00. She testified that absent taking a fully taxable withdrawal from her inherited IRA, she does not have sufficient funds to pay these expenses. Given these circumstances, the trial court did not err in finding Mrs. Fontana established she was “in need of support” under La. C.C. arts. Ill and 112.
Nor did the trial court err in finding that the circumstances of this case are appropriate for fashioning a rehabilitative support award.[6] Mrs. Fontana, at the time of the hearing, testified that she was forty-eight years old and had no infirmity or impediment that prevented her from working full time. However, she has spent the last two decades primarily raising the parties’ four children while Mr. Fontana worked building his successful legal career. Although she has two college degrees, she has never worked in either field. Her current employment plan — albeit not well documented — is to obtain a landscaping contractor’s degree at Delgado and then start her own landscaping business. She estimates that it will take two to three |16years for her to obtain the degree. Given these circumstance, we cannot conclude the trial court erred in awarding rehabilitative spousal support for three years.
Mr. Fontana alternatively contends that the trial court employed the wrong standard in setting the amount of permanent spousal support. He contends that the trial court in setting the amount of spousal support used the standard of living to which Mrs. Fontana was accustomed to during the marriage — awarding lifestyle expenses — as opposed to basic necessities — awarding maintenance expenses. As noted, the trial court adopted the amount in the Spreadsheet as the spousal support award. Mr. Fontana contends that the Spreadsheet improperly includes lifestyle expenses — such as beauty salon and health club — that should have been excluded. He also contends that the Spreadsheet improperly included miscellaneous expenses, such as “other” and “cash,” that likewise should have been excluded. See Parker v. Parker, 98-817 (La.App. 3 Cir. 3/2/94), 634 So.2d 1231, 1233 (holding that “support” does not encompass miscellaneous expenses).
Mrs. Fontana counters that the Spreadsheet correctly calculates her maintenance *184 expenses as $3,369.50 per month based on her actual living expenses. She contends that a cursory review of the expenses reveals that they are not grossly excessive, unfair, or contrary to law. Indeed, she notes the trial court in its oral reasons for judgment commented that the expenses on the Spreadsheet “do not seem extravagant or unreasonable, particularly considering the income of the Father.” Mrs. Fontana emphasizes that the amount of spousal support she seeks is significantly less than the $15,000 per month that Mr. Fontana was paying under the interim consent judgment.
Mr. Fontana correctly contends that certain of the expenses included in the Spreadsheet should have been excluded. It was inappropriate for the trial court to 117include in the permanent spousal support award the following lifestyle expenses: entertaining ($109.71), charities ($10.91), salon ($42.38), health club ($15.42), pet expense ($7.57), other ($67.74), and miscellaneous cash (estimate) ($125).[7] We thus amend the spousal support award to exclude these inappropriate expenses, which total $378.73.
Summarizing, we find no error in the trial court’s award of rehabilitative spousal support for three years. However, we reduce the amount of the award by the total of the inappropriate expenses enumerated above — $378.73—and thus amend the award to $2,990.77.

(ii) child support

An award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion or manifest error. Watts v. Watts, 08-0834, p. 3 (La.App. 4 Cir. 4/8/09), 10 So.3d 855, 858 (citing Langley v. Langley, 07-0754, p. 3 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 883). As this court recently noted in Dejoie v. Guidry, 10-1542, p. 19 (La.App. 4 Cir. 7/13/11), 71 So.3d 1111, 1122, “[t]he abuse-of-diseretion standard of review is highly deferential to the trial judge’s determination.” Id.
The statutory guidelines for determining child support are set forth in La. R.S. 9:315 to 9:315.20. Deviations from the guidelines “shall not be disturbed on appeal absent a finding of manifest error.” La. R.S. 9:315.17. It is undisputed that under the guidelines this is a high income child support case — the parents’ | ^combined adjusted monthly gross income exceeds the maximum level listed on the guideline schedule, which is now $30,000.00. La. R.S. 9:315.19.
The proper methodology for calculating the total child support obligation in a high income case was outlined in Hagen v. Hagen, 11-1130, pp. 12-14 (La.App. 1 Cir. 8/15/12), 110 So.3d 172, 179-80, as follows:
[T]he “basic child support obligation” is determined in accordance with LSA-R.S. 9:315.13, since the Hagens’ combined adjusted income is higher (more than $40,000.00 per month) than the highest amount in the LSA-R.S. 9:315.19 schedule ($30,000.00 per month), Pursuant to LSA-R.S. 9:315.13, the trial court uses his discretion in setting the amount of the “basic child sup *185 port obligation” in accordance with the best interest of the child and the circumstances of each parent, but “in no event” is the “basic child support obligation” set at an amount lower than the “highest amount set forth in the schedule.”[8] The highest amount in the schedule for three children is $4,302.00 [for two children, which is the case here, the amount is $3,742.00]. See LSA-R.S. 9:315.19.
Nevertheless, once the “basic child support obligation” ($4,302.00 in this case) is determined, the inquiry is not at an end. After the “basic child support obligation” has been established, the “total child support obligation” is then calculated. See LSA-R.S. 9:315.2(E) [ (providing that “[a]fter the basic child support obligation has been established, the total child support obligation shall be determined as hereinafter provided in this Part.”) ].
To accomplish this, the following adjustments are made to the “basic child support obligation:” adding net child care costs (per LSA-R.S[.] 9:315.3); adding child/children’s health insurance premium cost (per LSA-R.S[.] 9:315.4); adding uninsured | ^extraordinary medical expenses, if agreed by the parties or ordered by the court (per LSA-R.S[.] 9:315.5); adding other extraordinary expenses (such as private school tuition, expenses to enhance the health, athletic, social, or cultural development of the child, and transportation costs), if agreed by the parties or ordered by the court (per LSA-R.S[.] 9:315.6); and deducting a child’s extraordinary income that is used to reduce the costs of a child’s basic needs (per to LSA-R.S[.] 9:315.7 and LSA-R.S. 9:315.8(B)). The resulting sum is the “total child support obligation.” LSA-R.S. 9:315.8(A).
Each party’s share of the “total child support obligation” is then determined by multiplying his or her percentage share of combined adjusted gross income times the “total child support obligation.” LSA-RS. 9:315.8(0. The party without legal custody or the non-domiciliary party owes his or her percentage share of the “total child support obligation” as a money judgment of child support to the custodial or domiciliary party. LSA-R.S. 9:315.8(D).

Id.

In this case, the trial court provided the following oral reasons for its ruling on the child support issue:
I find that the figures listed on MF-2 [the Spreadsheet] for two minor children totaling $4,171.59[9] is appropriate, so the Court will award that amount for the children. There is no tuition. There’s an educational expense of $10 per month. That’s clearly not tuition. So the Court is going to order Mr. Fontana to pay child support in the amount of $4,171.59 plus maintain health insurance on the children plus pay the tuition for the children.
As evidenced by the trial court’s reasoning and its judgment, the trial court failed to follow the proper methodology, outlined in *186 Hagen case, in calculating the total child support obligation.[10] The trial court simply adopted the Spreadsheet amount as the child support award. To address the other expenses, the trial court ordered Mr. Fontana to pay 100% of the tuition, school related expenses, and health insurance; and 98.98% of the extraordinary medical expenses, work-related after |2ncare, and the extracurricular expenses for the minor children. The 98.98% figure was calculated by attributing to Mrs. Fontana a yearly income of $10,000.00. The trial court arrived at that figure by accepting Mr. Maggiore’s testimony that Mrs. Fontana could expect to receive about $10,000 per year in distributions from the inherited IRA.
Mr. Fontana contends that Mr. Magg-iore’s methodology reflected in the Spreadsheet, which the trial court accepted, is fundamentally flawed in two respects. First, he contends that Mr. Maggiore counted many expenses that either do not benefit the minor children or were paid for by Mr. Fontana directly, or both. Second, he contends that even accepting the Spreadsheet amount of $4,171.59, he was entitled to an adjustment credit under La. R.S. 9:315.9, which governs shared custodial arrangements, given that he enjoys equal physical custody of the minor children under the terms of the interim consent judgment. Additionally, he contends that the trial court incorrectly imputed Mrs. Fontana’s income lower than the minimum wage, pursuant to La. R.S. 9:315.11, and that this error artificially skewed the pro rata percentages the parties, by law, are obligated to pay for extraordinary expenses.
Mrs. Fontana counters that the trial court did not err in setting the monthly child support award based on the minor children’s actual expenses as calculated by Mr. Maggiore on the Spreadsheet. She cites her testimony that the expenses enumerated on the Spreadsheet are the actual expenses for the time the children were in her household in 2011 and that she would be hindered in carrying for the children if she was awarded a lesser amount.
Pursuant to La.R.S. 9:315.19, the highest base child support obligation for two children is $3,742.00. The trial court, accepting the amount from the |¾1 Spreadsheet, set Mr. Fontana’s base child support obligation in its reasons for judgment as $4,171.59 (in its judgment as $4,176.59). Given Mr. Fontana’s monthly income of over $30,000.00, we cannot conclude this figure is an abuse of discretion. Nor do we find, as Mr. Fontana suggests, that the trial court’s setting of this amount was a deviation from the guideline for which the trial court was required to provide reasons; rather, the statute requires the trial court exercise its discretion in setting the base child support award. See Robert C. Lowe, 1 LA. PRAC. DIVORCE § 8:33 (2013 ed.) (noting that when the combined income exceeds the guidelines, “the trial court is not actually deviating; rather, it must apply 9:315.13(B).”)
Moreover, the jurisprudence has recognized that there is “no universal mathematical formula” for calculating the basic child support to be paid in high income child support cases. Serrate v. Serrate, 96-1545, p. 7 (La.App. 1 Cir. 12/20/96), 684 So.2d 1128, 1133. Rather, the jurisprudence has held that the trial court must consider the totality of circumstances in the particular case to formulate an appropriate child support award. Weinstein v. Weinstein, 10-1083, pp. 11-12 (La.App. 3 *187 Cir. 4/13/11), 62 So.3d 878, 886-87 (citing Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4 Cir. 4/26/95), 654 So.2d 877). Given the circumstances of this case, we find no error in the trial court’s accepting the Spreadsheet amount as the base child support award.
As noted, Mr. Fontana further contends that the trial court erred in failing to impute to income of at least the minimum wage to Mrs. Fontana given the parties’ youngest child was over five years old. According to Mr. Fontana, using $7.25 per hour at forty hours a week, the minimum wage figure that should have been_[22Ímputed to Mrs. Fontana was $1,256 per month. He further contends that she could make far more utilizing her degrees. We find this argument unpersuasive.
The governing statutory provision is La. R.S. 9:315.11, which provides:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party’s income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey.
La. R.S. 9:315.11(A). The trial court stated that it would only impute to Mrs. Fon-tana the mandatory minimum income. Mr. Maggiore testified that Mrs. Fontana could expect to receive about $10,000.00 per year in distributions from the Merrill Lynch IRA. The trial court accepted this figure as the amount it imputed to Mrs. Fontana. Given our decision to affirm the award of rehabilitative spousal support to Mrs. Fontana for three years, it would be inconsistent to determine the trial court erred in failing to find she was voluntarily unemployed or underemployed during that period. Nor do we find the trial court erred in failing to impute the part-time, seasonal income from Rehage to Mrs. Fontana. We thus find Mr. Fontana’s argument regarding the failure to impute additional income to Mrs. Fontana unpersuasive.
As noted, Mr. Fontana still further contends that the trial court erred in failing to recognize that this is a “shared custodial arrangement” governed by La. R.S. 9:315.9 and failing to calculate his support obligation under the special formula set forth in that statute. Under that statute, “shared custody” is defined as “a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time.” La. R.S. 9:315.9(A)(1). In this case, the | ^governing custody order is set forth in the interim consent judgment, which provides for a shared physical custody arrangement, particularly, it states:
On an interim basis, without any prejudice whatsoever to either party, and without any need to show a change in circumstances or anything else to alter the physical custody schedule, the parties shall share physical custody of Harrison Fontana and Wyatt Fontana on an alternating weekly basis, from 7:00 p.m. on Sunday to 7:00 p.m. the following Sunday.
Although the consent judgment provides for a shared physical custody arrangement, the parties have deviated from the terms of the consent judgment. Mrs. Fon-tana testified, and Mr. Fontana did not dispute it, that she had one of the minor children (Harrison Fontana) every day during the summer while Mr. Fontana was at work. Moreover, the consent judgment failed to address the parties’ sharing of custody for the holidays. On the day of the hearing, the trial court addressed, but *188 declined to reach Mrs. Fontana’s motion seeking a change in the custody arrangement; instead, the trial court set the motion for a separate hearing.[11] Given these factors, we find it is impossible to determine from the record whether the parties have a “shared custody” arrangement governed by La. R.S. 9:315.9(A)(1). For this reason, we cannot conclude the trial court erred in failing to find this case is a “shared custody” case governed by that statute.
As noted, Mr. Fontana’s final argument regarding child support is that the trial court erred in ordering him to pay 100% of the children’s private school tuition and fees. He contends that the trial court is required, by statute, to prorate these expenses between the parties. As outlined in the Hagen case, the proper methodology for calculating the total child support obligation is to include these expenses in the calculation under La. R.S. 9:815.6 and to prorate them. In this | ^particular case, however, we find no abuse of discretion in the trial court’s order that Mr. Fontana pay 100% of these expenses. Given Mr. Fontana was paying all of these expenses under the interim consent agreement coupled with Mrs. Fon-tana’s minimal income in comparison with Mr. Fontana’s income, we cannot say it is inequitable or an abuse of discretion to require him to continue to pay 100% of these expenses.
In sum, we find no abuse of discretion in the trial court’s acceptance of the Spreadsheet amount as the base child support obligation. Nor do we find any error in the trial court’s refusal to impute income to Mrs. Fontana or its refusal to find this case a “shared custody” case governed by La. R.S. 9:315.9(A)(1).[12] Nor do we find the trial court abused its discretion in requiring Mr. Fontana to pay 100% of the tuition and fees.

(in) Contempt

A trial court is vested with “great discretion to determine whether a party should be held in contempt for willfully disobeying” a court order. Fink v. Bryant, 01-987, p. 7 (La.11/28/01), 801 So.2d 346, 350; see also South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent To Own, Inc., 09-0011 (La.App. 4 Cir. 6/30/10), 42 So.3d 1094. A trial court’s “decision will only be reversed when the appellate court can discern an abuse of that discretion.” Smith v. Pillow-Smith, 10-0167, p. 3 (La.App. 4 Cir. 11/17/10), 52 So.3d 264, 267 (citing Stephens v. Stephens, 30,498, p. 5 (La.App. 2 Cir. 5/13/98), 714 So.2d 115, 118).
| ^Constructive contempt occurs when there has been “willful disobedience” of a court order. La. C.C.P. art. 224. To find a person guilty of constructive contempt, it is necessary to find that he or she violated the court’s order intentionally, knowingly, and purposefully, without justifiable excuse. Biggers v. Biggers, 13-127, p. 5 (La.App. 5 Cir. 9/18/13), 122 So.3d 604, 607.
In her motion for contempt, Mrs. Fontana averred that Mr. Fontana has “failed to pay interim spousal support in the sum of $3,940.00 in reimbursement expenses, and has not paid the cash *189 amount which is due for the month of November, 2012.”
In this case, the lawful court order at issue is the interim consent judgment. The pertinent part of the consent judgment is the provision for a lump sum of child support and interim spousal support, which includes two components: the payment of an enumerated list of direct expenses and a monthly cash payment of $2,750. The consent judgment provision reads as follows:
[Bjeginning March 15, 2011, on the interim basis, without any prejudice whatsoever to either party, and with the understanding that any ultimate award will be retroactive to January 4, 2011, the date of judicial demand, and subject to credit for payments made by him from that date forward, Jules A. Fonta-na, III, be and he is hereby ordered to pay, as child support and interim spousal support, which payment is not broken down, the following expenses directly, irrespective to their amount: the first mortgage on the family home (including property taxes and all insurance); the second mortgage on the family home; Entergy; Atmos; cable; home telephone; water; alarm; housekeeper; Claire Fontana’s cellular telephone; Margeaux Fontana’s cellular telephone; Mary Fontana’s cellular telephone; allowances for the minor children as paid in the past; church contribution; lawn care; health insurance premiums for Mary Fontana, Claire Fontana, Mar-geaux Fontana, Harrison Fontana, and Wyatt Fontana; newspaper delivery; tuition and all school-related expenses for Harrison Fontana; tuition and all school-related expenses for Margeaux Fontana; day care expenses for Wyatt Fontana; all uncovered medical and dental expenses for Mary Fontana, Claire Fontana, Margeaux Fontana, Harrison Fontana and Wyatt Fontana; gasoline expenses for the automobiles driven by Mary Fontana and Claire Fontana; necessary ^repairs to the family home; pool maintenance and upkeep; and the SNAP Fitness monthly expenses for Mary Fontana and Claire Fontana. In addition to the foregoing, Jules A. Fontana, III, shall pay to Mary D. Fontana in cash the sum of TWO THOUSAND SEVEN HUNDRED FIFTY AND 00/100 DOLLARS ($2,750.00) per month on the 1st day of each month. One-half (½) of the amount is due on March 15, 2011.
At the hearing, Mrs. Fontana’s motion for contempt was heard with the other motions. Following the hearing, the trial court found Mr. Fontana in contempt. In its oral reasons for judgment, the trial court stated:
The Court is — Ms. Fontana’s motion for contempt, I stated that the amount of arrearages was $8,950 plus the cash amount that was due for November 2012. The Court understands it’s undisputed that the cash amount for November 2012 has been paid, although it was paid late. The court’s going to make the arrearages of $8,950 executory. However, if Mr. Fontana can prove ... that he has paid any of those amounts, then he will be given a credit for it.
The Court does hold Mr. Fontana in contempt and orders him to pay $1,500 in attorney’s fees plus the costs incurred in bringing this rule.
On appeal, Mr. Fontana contends that the trial court abused its discretion in making the arrearages executory and holding him in contempt. He does not dispute that he made the November 2012 cash payment late. He, however, explains that it was his customary practice to pay the full cash payment amount on the fifteenth day of the month and that he made the *190 November 2012 payment on the twenty-first of the month, only six days later than he customarily made that payment. ' Continuing, he explained that this customary practice began with the first payment required by the consent judgment, which was that he pay “[ojne-half (⅜) of the amount” on March 15, 2011.. Although he only was required to pay one-half, he paid the full amount on that date and continued doing so on the fifteenth day of each month thereafter. Again, he admits he paid the November payment on November 21st, as opposed to November 15th; however, he contends that due to 127their custom he was only six — -not twenty-one— days late. He contends that he immediately paid the support amount due as soon as he could on the day after the contempt motion was filed. In mitigation, he contends that he was maintaining all of his children’s educational, extracurricular, and medical expenses. Given the multiple other items he needed to maintain, he submits that it was an abuse of discretion to find this six-day delay was a willful, deliberate violation of the court’s order.
In support of his position, Mr. Fontana cites Smith v. Pillow-Smith, 10-0167 (La.App. 4 Cir. 11/17/10), 52 So.3d 264. In Pillow-Smith, the trial court refused to find that Mr. Smith violated the child support order intentionally, knowingly, and purposely, without justification. The trial court reasoned that Mr. Smith had paid expenses for his children “well beyond the basic child support obligation,” despite the fact that the parties were going through bankruptcy proceedings at the same time. Affirming, this court reasoned that
Although Mr. Smith was conscious of his duty to obey the court’s order, the record does not reveal that he was willful in failing to make child support payments in purposeful violation of the .court’s order. Mr. Smith testified that there were times when he paid less than the court ordered child support, but at other times he paid more than the court ordered child support in addition to making direct contributions to the support and maintenance of the minor children by purchasing items such as clothes, haircuts, school books, and school lunches.
Pillow-Smith, 10-0167 at pp. 4-5, 52 So.3d at 268.
We find Mr. Fontana’s reliance on the Pillow-Smith case well-taken. Pursuant to the consent judgment, Mr. Fontana, like Mr. Smith, was paying expenses for his children “well beyond the basic child support obligation.” Although the consent judgment required him to pay one-half of the cash payment on March 15, 2011, he paid the full amount. Every month thereafter, with the ^exception of November 2012, he made the full cash payment on the fifteenth of the month. Although the consent judgment states that the cash payment was due on the first of each month, Mrs. Fontana voiced no complaint regarding this custom until she filed this contempt motion on November 20, 2012, because Mr. Fontana was five days late. On the day after Mrs. Fontana filed her contempt motion, Mr. Fontana made the cash payment, albeit six days later than customary. Given the parties, by their own practices, deviated from the terms of the consent judgment, we cannot conclude Mr. Fontana’s six-day delay in payment was willful or deliberate. We thus find the trial court abused its discretion in finding Mr. Fontana in contempt for this delayed payment.[13]
*191 Likewise, we find merit to Mr. Fontana’s contention that the trial court abused its discretion in finding him in contempt for failing to pay the reimbursements of direct expenses to Mrs. Fontana and in making $8,940.00 of these reimbursements executory. Mr. Fontana explained that he would either pay the direct expenses himself; or if that was not feasible, he would reimburse Mrs. Fontana for her payment of those expenses. As an example, he noted that if he was not present to pay the housekeeper, Mrs. Fontana would pay her; and he would reimburse Mrs. Fontana.
Mr. Fontana emphasizes that the consent judgment set no specific time for the payment of the direct expenses; rather, it simply states that he is required to pay them. He thus contends that the trial court erred in finding him in contempt for failing to pay the reimbursements to Mrs. Fontana. Mrs. Fontana counters that this ^argument is specious because the consent judgment requires no reimbursement; rather, it requires Mr. Fontana to pay these expenses. She contends that the trial court has vast discretion and correctly found Mr. Fontana in contempt for failing to reimburse her for these expenses.
As Mrs. Fontana concedes, the consent judgment does not require Mr. Fontana to reimburse any expenses. Nor does the consent judgment set a time for the payment of the direct expenses. Although a reasonableness standard could be implied, we decline to find a party in contempt for failing to pay an uncertain amount of expenses on an uncertain date. Given the lack of a court order requiring Mr. Fonta-na to reimburse Mrs. Fontana, we find the trial court abused its discretion in finding Mr. Fontana in contempt for failing to pay the reimbursements. We likewise find there is no past due amount of support in arrears; hence, the trial court erred in making any amount of support executory under La. C.C. art. 3946.[14] Accordingly, we reverse the trial court’s ruling making $8,940.00 in reimbursements executory. We also reverse its decision holding Mr. Fontana in contempt and the associated awards of attorneys’ fees and costs.

DECREE

For the forgoing reasons, the spousal support award is amended to $2,990.77 and affirmed as amended. The child support award is affirmed. The trial court’s ruling making arrearages executory is reversed. The trial court’s finding of Mr. |30Fontana in contempt and the associated attorneys’ fees and court costs awards are reversed.
AMENDED; AFFIRMED IN PART, AS AMENDED; AND REVERSED IN PART.
LOVE, J., Concurs in Part and Dissents in Part.
BELSOME, J., Concurs in Part and Dissents in Part.
_⅛ APPENDIX_

MARY FONTANA-2011 EXPENSES

Allocation Monthly Amount

*192 [[Image here]]

. The judgment states the child support amount as $4,176.59. In contrast, Mrs. Fon-tana’s expert states in the spreadsheet he prepared that the amount Mrs. Fontana is claiming in child support is $4,171.59. The amount in the judgment controls.

. The pertinent provision of the interim consent judgment is quoted elsewhere in this opinion.

. Noting that this was also a hearing on a contempt motion, the trial court characterized Mr. Fontana’s actions regarding the 2010 IRS tax liability as establishing his "hardheartedness.” As to the 2010 IRS tax liability, Mrs. Fontana testified that Mr. Fontana told her that he quit paying the taxes that year because she "wouldn’t be able to afford to leave him because [they] would owe that much in taxes.” She testified that he told her this regularly in 2010 and that it prompted her to see an attorney. As noted elsewhere, given this tax liability issue, we find no abuse of discretion in the trial court’s inclusion of Mrs. Fontana’s attorneys’ fee expenses as a maintenance expense. We do not, however, find this issue relevant to the contempt motion, which is based on a different issue — Mr. Fontana's failure to make support payments on a timely basis.

. At the hearing, Mr. Maggiore was provided with more current information regarding Mr. Fontana's draws through the date of the hearing. Using that updated information, Mr. Maggiore calculated Mr. Fontana’s annualized income would be $346,399.

. Because the Spreadsheet formed the basis for the trial court's award of spousal support and child support, a copy of the Spreadsheet, which was admitted into evidence at the hearing, is attached as an appendix to this opinion.

. The concept of rehabilitative alimony has been explained as follows:
Rehabilitative alimony is appropriate where the dependent spouse needs to improve his or her job skills in order to obtain a standard of living approaching that enjoyed by the parties during the marriage, and the spouse indicates a desire to enroll in an educational program to obtain job skills or intends to apply the alimony towards job training designed to lead to employment. Other circumstances that may justify an award of rehabilitative alimony include the fact that the requesting party sacrificed educational and employment opportunities during the marriage and was absent from the job market for a significant length of time.
24A Am.Jur.2d Divorce and Separation § 763; see also Daniel Jones, Rehabilitative Alimony — The Goal of Self Support, 20 J. Contemp. Legal Issues J. 25, n. 2 (2009) (noting that "[rjehabilitative alimony has been utilized frequently where a younger dependent spouse entered marriage with marketable skills, which then deteriorated through nonuse, or the dependent spouse evidenced a capability for self-support, which could be developed through training or academic study. In these circumstances, an award of alimony for a limited period of time is provided to give such spouse an opportunity to rehabilitate old skills or acquire new ones.”)

. Although we could find no case on the issue of whether a spouse’s attorney’s fees are appropriate, we note the 1997 Revision Comments to La. C.C. art. 112 state that "Factor (3) [current Factor (2), which is ”[t]he financial obligations of the parties,”] is intended to be broad enough to permit the court to consider the attorney's fees obligations of either or both parties in making a spousal support award.” Given Mr. Fontana’s treatment of the 2010 tax liability owed by the community to the IRS, we cannot conclude that the trial court abused its discretion in finding it appropriate to include Mrs. Fontana's attorney's fees in the support award.

. This statutory provision provides:
If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19 [now $30,000], the court:
(1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule ...
La. R.S. 9:315.13(B).

. As noted in footnote one of this opinion, the Spreadsheet amount for child support is $4,171.59, but the judgment amount is $4,176.59.

. Given the circumstances of the case, we find it unnecessary to remand to cure this deficiency in the record.

. The issue of custody is not before us on this appeal.

. Mrs. Fontana filed a motion to change custody, which was also heard on the same date as the hearings at issue on appeal. The trial court decided to set the motion for a hearing. The issue of custody is not before us on this appeal. We expressly further note that Mr. Fontana can re-raise this issue once the trial court renders a judgment on the custody issue.

. We also note that, contrary to Mrs. Fonta-na’s contention, the consent judgment does not make the cash payment retroactive to January 2011. Rather, it provides that "any ultimate award will be retroactive to January 4, 2011, the date of judicial demand.”

. La. C.C. art. 3946 provides:
When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.